# EXHIBIT 4

*99  *JURY SELECTION IN A CRIMINAL CASE*

It is often said that most cases are won or lost on Voir Dire - agree. It is the first opportunity you have to impress the panel with your sincerity, integrity and ability. I believe in the importance of first impressions; if you can show - the panel that you wear the "white hat," and if you don't destroy that illusion during the trial, then the jury will *want* to convict. Who you select for the jury is, at best, a calculated risk. Instincts about veniremen may be developed by experience, but even the young prosecutor may improve the odds by the use of certain guidelines - if you know what to look for.

First and foremost, you are dealing with people, and there are no hard and fast rules governing who will be a good State's juror. Who you select, and what you qualify the panel on will depend on the type of crime, the age, color and sex of the Defendant, the rules of the Court, the personality of the defense attorney, and your own individual style and judgement.

The following outline contains very little substantive law because I presume that any prosecutor is as able to look it up as I. The outline does, however, contain one prosecutor's ideas on some things that need to be said to the panel, and some things to look for in a juror.

I. Purpose of Voir Dire.

A. Legal purpose.

1. To qualify jurors on law regarding case.

2. To become acquainted with veniremen so that you may use your strikes intelligently.

B. Tactical Purpose.

1. Allow the veniremen to be impressed with you and your cause.

2. Explain the law in the manner most beneficial to the State.

II. Preparation for Voir Dire. In many counties, the prosecutor selecting the jury will not present the evidence.

 *100  A. Look up and learn the law regarding the particular offense to be tried.

1. List and remember the elements of the offense.

2. Understand and remember any definitions of words of art applicable to the offense.

B. Be well acquainted with facts of your case.

1. Learn what general law - will be applicable to the facts.

2. Learn all weaknesses in the case in order to prepare the jury.

C. If you do not know the judge well, discuss Voir Dire with him in advance.

1. It will allow you to know where you stand on questionable issues so that you will not be embarrassed in front of the panel by an adverse ruling.

Case 2:20-cv-00599-JPH-DLP    Document 1-6    Filed 11/12/20    Page 3 of 10 PageID #: 96

2. If the judge usually conducts Voir Dire himself, he may allow the lawyers to do it if adverse asked - this is always preferable.

III. What to look for in a juror.

A. Attitudes.

1. You are looking for a strong, stable, individual who believes that Defendants are different from them in kind, rather than degree.

2. You are not looking for any member of a minority group which may subject him to oppression - they almost always empathize with the accused.

3. You are not looking for the free thinkers and flower children.

B. Observation is worthwhile.

1. Look at the panel out in the hall before they are seated. You can often spot the show-offs and the liberals by how and to whom they are talking.

 **\*101**  2. Observe the veniremen as they walk into the courtroom.

a. You can tell almost as much about a man by how he walks, as how he talks.

b. Look for physical afflictions. These people usually sympathize with the accused.

3. Dress.

a. Conservatively, well dressed people are generally stable and good for the State.

b. In many counties, the jury summons states that the appropriate dress is coat and tie. One who does not wear a coat and tie is often a non - conformist and therefore a bad State's juror.

4. Women.

a. I don't like women jurors because I can't trust them.

b. They do, however, make the best jurors in cases involving crimes against children.

e. It is possible that their "women's intuition" can help you if you can't win your case with the facts.

d. Young women too often sympathize with the Defendant; old women wearing too much make - up are usually unstable, and therefore are bad State's jurors.

e. It is impossible to keep women off your jury, but try to keep the ratio at least seven to five in favor of men.

5. Weight. Extremely overweight people, especially women and young men, indicates a lack of self - discipline and often times in stability. I like the lean and hungry look.

6. Age. People over forty are more settled and more ready to believe that criminals should be punished.

**\*102**  7. Race. Minority races almost always empathize with the Defendant.

8. Demeanor.

a. Attentive, intelligent looking veniremen that you are able to communicate with on Voir Dire will generally be all right.

b. Always observe how the veniremen react when being questioned by the defense attorney, and compare it to the venireman's reaction to you.

IV. Your approach to the jury panel.

A. When the judge is talking to the panel.

1. Sit at the counsel table with your chair turned at an angle so that you can see the judge and the panel; ie, never turn your back to the panel.

2. Sit upright and have some eye contact with the panel.

B. When you are talking to the jury panel.

1. Stand upright and be as loose and at ease as possible.

2. Stand close to the panel. The further you are away, the more distant seems the communication.

3. Don't pace, but some movement may aid in keeping their attention.

4. Use your notes as little as possible.

5. Smile, be pleasant, but not too jovial; impress them with your earnestness.

V. Speaking to the entire panel.

A. Introductory.

1. Introduce yourself, tell your position, who you work for and who you represent.

2. Introduce the Defendant and his attorney(s), asking if anyone knows them either personally  **\*103**  or by reputation. Don't dignify the Defendant by calling him "Mister", or using his first name.

3. Orient the panel (if the judge does not) as to what Court they are in, the jurisdiction of the Court (as to felony vs. misdmeanor), explain the difference and explain that your purpose is to find twelve fair and impartial people to serve on this jury - people that can be just as fair to the State as you *know* they will be to the Defendant.

a. This approach makes it appear that the State is the underdog - most people will pull for the underdog.

b. Reasons for briefly orienting the panel.

(1) Most veniremen are ignorant of any specifics regarding the Courts and the legal procedures.

(2) It gives the panel the feeling that you are trying to aid them.

4. Explain their duties as jurors.

a. They are not expected to know the law and, the judge will give them all the law of the case in the Court's charge.

b. The jury is to determine the facts of the case, the credibility of the witnesses, and the weight to be given their testimony.

(1) The jury may believe all, any part of, or nothing that any witness says.

(2) They may look to the witness demeanor motive or bias, reasonableness of what is said - using their common sense to guide them.

c. If you know that the Defendant has more witnesses than you, explain that numbers are not decisive, and they **\*104** may disbelieve one hundred witnesses in favor of the testimony of one.

B. Qualifying the panel on the general law. This is the law applicable to every criminal case.

1. Presumption of innocense.

Tell the jury

a. All Defendants in a criminal case, no matter what they are charged with, are presumed to be innocent.

b. It is a legal presumption and just because they are presumed to be innocent does not mean that he (the Defendant) did not commit the crime.

c. This presumption lasts only until the State removes it by proving its case to their satisfaction beyond a reasonable doubt.

2. Burden of proof - beyond a reasonable doubt.

Explain that:

a. The State understands that burden and willingly accepts it, or else would not be here.

b. Though we accept our burden, we wish to be held to no higher burden, such as; beyond any doubt, or beyond a shadow of a doubt.

c. A mere discrepancy in evidence is not reasonable doubt.

d. The doubt must be reasonable, and it must be a reasonable doubt applicable to one of the elements of the offense that the law requires the State to prove to entitle it to a conviction.

3. Defendant's failure to testify.

Explain that:

**\*105** a. The Defendant may call witnesses in his own behalf if he chooses, and may subpoena any witness that could help him.

b. The Defendant may testify in his own behalf if he chooses, but if he should decide not to testify, we who represent the people can not call him as a witness, and they, the jury, could not consider his failure to testify as any evidence.

c. If he should so choose to testify, they must consider his credibility; looking to his demeanor, the reasonableness of his testimony, and his motives for lying - what *he* has to gain or lose.

d. Just because he is presumed to be innocent, does not mean that he is presumed to be a truth teller.

C. Qualifying the panel of the law of your case.

1. Carefully explain the elements of the offense as listed in the indictment and advise the panel that the State must prove these things, but none other.

2. Define any words of art that are necessary to your case and distinguish the legal meaning from the usual meaning, such as:

a. "Intoxication" is not necessarily drunk.

b. "Malice" is not premeditation.

c. "Possession" is not ownership.

d. "On or about" means accessable.

e. "Assault" does not require a touching.

f. "Carnal knowledge" requires only penetration.

3. Give examples when you explain the law. The examples should be of a crime less aggravated than the one you intend to **\*106** prove, so when you present your facts the jury will think it is a highly aggravated crime.

4. Qualify the panel on defensive issues.

a. The defense attorney will do this anyway, so you tell them first and in the light most beneficial to the State.

b. Circumstantial evidence.

(1) Explain that it is a type of evidence, and is different only in kind to direct evidence. Tell them that fingerprints are circumstantial evidence.

(2) Give examples of circumstantial evidence.

5. Punishment.

a. This is the most important qualifying issue.

(1) In many cases the only issue is that of punishment. A case is never won unless a jury returns more time than you offer on a plea of guilty.

(2) A person weak on the maximum punishment will generally be weak on guilt.

b. Tell the jury that the State intends to ask the jury a sentence for "life" (or a substantial number of years, etc.) at the close of the testimony.

(1) This can backfire unless you have evaluated the case and know that you can ask "life" (etc.) without looking ridiculous.

 **\*107**  (2) This is a good approach because it gives the jury time to get used to the idea of a high verdict.

(3) It allows you to argue on punishment that you have been fair with them (the jury) from the outset by telling them what you would be seeking.

c. Always stress the maximum in the range of punishment, but advise and qualify the panel on the minimum - otherwise, you may lose your aura of extreme fairness.

d. Probation.

(1) Ask the judge to require the application for probation to be filed before jury selection so you may qualify the jury.

(2) Explain the probation law to the panel, and that just because a person may be eligible for probation, does not mean that he is entitled to probation.

(3) On heavy cases such as murder, rape and robbery, etc:

(aa) Explain that every Defendant, no matter what he is charged with falls within the probation law.

(bb) The minimum punishment, especially probation, is fertile ground for the defense disqualifying a juror for cause. Since you talk to the panel first, you can prevent the disqualification of a strong juror.

 **\*108**  (11) Explain that they don't have to be able to *think* of a murder case where the Defendant may deserve probation, but if one *should* come along, and they thought it was the right thing to do, they could - vote it.

(22) Couch the question in terms of what a "fair" person would do (no one considers themselves unfair.)

(4) Always tell the jury that the State is opposed to probation in this case.

e. Tell the panel about a bifurcated trial and that on punishment they may consider all of the evidence introduced on the guilt or innocence phase of the trial, and also the reputation, character and prior criminal record, if any, evidence of which may be admitted on the punishment hearing.

(1) The above is a true statement of the law, and any judge should allow a prosecutor to so advise the jury.

(2) Stress the words, "and prior criminal record", because it will dispell the jury's beliefs that a Defendant's record will be admitted on the guilt or innocence hearing.

f. Talk in terms of a "sentence" of life, etc. stressing the word "sentence". This will convey to the panel the fact that he will be paroled early.

**\*109**  g. The State has no burden of proof on punishment as it does on guilt. We need not prove beyond a reasonable doubt that the Defendant deserves any Particular sentence - it is the jury's job to make the punishment fit the crime.

VI. Questioning the veniremen individually - this is done after addressing the panel as a whole.

A. Demeanor, preliminaries and helpful hints.

1. The questioning will progress much more smoothly if you can persuade the Court to seat the veniremen in the order that they are listed.

2. Be pleasant and respectful. Use "Yes, sir" or "Yes, Ma'am", and never talk down to a venireman.

3. Remember that the veniremen are probably self concious; the more at ease you are with them the more they will be at ease and honest with you.

4. Never give any indication to the panel as to whom you will strike.

5. Look at the venireman's eyes and throat during your questioning (especially relating to punishment).

6. Rate your venireman from one to five in the order of his desirability.

a. This will allow you to concentrate on the individual and his answers rather than writing.

b. If you want a record of their answers, have someone else in Court take notes.

7. In striking your lists be careful; more than one prosecutor has left an undesirable venireman on the jury as a result of striking the wrong name.

**\*110**  B. Questioning the venireman individually.

1. Ask the length of residence in the county.

a. People that move around very much are often unstable.

b. If the venireman have not lived in the county long, ask where they were born and reared.

(1) People from small towns and rural areas generally make good State's jurors.

(2) People from the east or west coasts often make bad jurors.

2. Who their family consists of.

a. People with a family are generally more responsible and therefore better jurors.

b. If the venireman has children, ask their ages if the case is one involving a crime against children, or the Defendant is young.

3. Occupation.

a. Ask a man "what is your profession or occupation?". Ask a woman "Are you employed outside the home?"

b. Working men.

(1) If a man is unemployed it may indicate instability.

(2) Men who are self - made successes, or work with their hands, or work in a managerial capacity are usually good.

(3) Technical jobs (engineers, accountants and scientists). There are two theories:

(a) They will pick your case apart, therefore, they are bad.

 **\*111**  (b) They are not inclined to "chase rabbits" thrown out by defense attorneys, therefore they are good.

(4) Intellectuals such as teachers, etc. generally are too liberal and contemplative to make good State's jurors.

c. Working women.

(1) These women are often preferable to other women because they have had a glimpse of the cruel, hard world.

(2) Women working in retail sales often make good State's juror's.

d. Spouse's occupation is a good question because all people to a varying extent, are reflections of their spouse.

4. Ask if the venireman has any hobbies or interests that occupy their spare time.

a. Active outdoors type hobbies indicate the best State's jurors.

b. Hunters always make good State's jurors.

5. Ask men if they have ever served in the military; if so, when, what branch of the service, their rank upon discharge and if they saw combat. Marines, master sargeants and those that have seen combat generally make good State's jurors.

6. Ask veniremen their religious preference.

a. Jewish veniremen generally make poor State's jurors. Jews have a history of oppression and generally empathize with the accused.

b. Lutherans and Church of Christ veniremen usually make good State's jurors.

 **\*112**  c. Those that indicate that they have no religious preference are often non-conformists and bad State's jurors.

7. Ask veniremen if they have ever had a direct interest in the outcome of a criminal case.

a. This is an interest in the sense that they, or a member of their family, or close personal friend has been charged with a crime.

b. If someone volunteers, take him before the bench to illict further questions, rather than embarrass the venireman in front of the entire panel.

c. Obviously, you don't want anyone who had a close friend or relative that was prosecuted by the State.

8. Ask the veniremen if they have previously served on a criminal jury.

a. Experienced jurors usually are better for the State than the inexperienced jurors.

b. You may ask the veniremen anything about the prior case other than the verdict.

### *113   VOIR DIRE TRANSCRIPT EXCERPTS RE JURY SHUFFLE

****

[6] jury panel shuffled?

MR. KINNE: No, Your Honor.

THE COURT: Does the defense wish a shuffle?

MR. CUNNINGHAM: Give us one minute, Judge.

MR. NELSON: We're going to change our election. We changed our decision.

THE COURT: I'm going to recess the jury panel to accomplish the shuffle for the State and let the lawyers attend to that.

MR. WEST: The State had already indicated they were not going to shuffle. I object.

THE COURT: I'll overrule. You still have your election. I'll overrule your objection and I'll recess the jury panel for you to accomplish the first shuffle and bring them back at 12:30. If the defense wants a shuffle, we'll do that and I'll go ahead with the [7] next shuffle.

(Whereupon, the following proceedings were held in the presence and hearing of the jury panel.)

THE COURT: Ladies and gentlemen of the jury panel, a procedural matter came up that I needed to attend to. Many of you must be wondering about lunch, if you're going to get to eat. I'm going to recess you - all until 12:45. That is only an hour and five minutes. It will be crowded downstairs and there will probably be a line.

Since I have not started any part of voir dire, let me give you these instructions: Since you have been called up as a prospective jury panel in the case entitled the State of Texas versus Thomas Joe Miller-El - he is - the man in the blue that looks like a leisure suit-you-all should not [8] and may not discuss his case or anything you might know or think you may hear about it. There should not be any conversation about it. If someone talks about the case in your presence, anyone says anything in your presence about **\*114** Thomas Joe Miller-El, tell them you're on a jury panel and the Judge has instructed you not to talk about it. I don't think anyone will, but if they do, let me know.

When you come back at 12:45, we may change the order that you're seated in, so stay out in the hall and we'll call you in. Thank you, folks.

(Whereupon, the jury panel and this cause were recessed for lunch, after which the following proceedings were held out of the presence and hearing of the jury panel.)