# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA          .   Criminal No.
                                  .   4:94-CR-121-Y
  vs.                             .
                                  .   Fort Worth, Texas
ORLANDO CORDIA HALL               .   October 24, 1995
                                  .   8:30 a.m.
. . . . . . . . . . . . . . . . . .

VOLUME 13
TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE TERRY R. MEANS,
UNITED STATES DISTRICT JUDGE,
and a Jury

<u>APPEARANCES</u>:

For the Government:         Mr. Richard Roper,
                            Mr. Paul Macaluso,
                            Ms. Delonia Watson and
                            Mr. Christopher Curstis
                            Assistant United States Attorneys
                            1700 Burnett Plaza
                            801 Cherry Street
                            Fort Worth, Texas   76102
                            (817) 334-0104

For the Defendant:          Mr. Michael Logan Ware
                            Attorney at Law
                            Law Offices of Michael Logan Ware
                            The Bryce Building
                            909 Throckmorton Street
                            Fort Worth, Texas   76102
                            (817) 338-4100

                            Mr. Jeff Kearney
                            Attorney at Law
                            Jeff Kearney & Associates
                            Sundance Square
                            120 W. Third Street, Suite 300
                            Fort Worth, Texas   76102
                            (817) 336-5600

ORIGINAL

U.S. District Court

Official Court Reporter:          Deborah M. Roberts, CSR
                                  523 United States Courthouse
                                  501 West 10th Street
                                  Fort Worth, Texas   76102-3637
                                  (817) 239-2037


Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.

INDEX

Opening Statement by Mr. Roper . . 26
Opening Statement by Mr. Ware   . . 37

GOVERNMENT'S EVIDENCE

| Witnesses: | Direct | Cross | Redirect | Recross | Voir Dire | Court |
|---|---|---|---|---|---|---|
| Rhonda Shipp | 43 | 49 | -- | -- | -- | -- |
| Thomas Hayden | 50 | 68 | 72 | -- | -- | -- |
| Sammie Riley | 73 | 92 | -- | -- | -- | -- |
| Greg Long | 96 | -- | -- | -- | -- | -- |
| Demetrius Hall | 107 | 228 | 247 | 253 | -- | -- |

GOVERNMENT'S DOCUMENTARY EVIDENCE

| Exhibit | Offered | Admitted | Exhibit | Offered | Admitted |
|---|---|---|---|---|---|
| 1-A + 1-B | 47 | 47 | 22 | 137 | 137 |
| 2-A - 2-C | 53 | 53 | 23-B | 226 | 226 |
| 2-D + 2-E | 64 | 64 | 23-C | 63 | 63 |
| 2-F + 2-G | 61 | 62 | 24 | 176 | 176 |
| 2-H - 2-K | 55 | 55 | 25-A - 25-K | 193 | 193 |
| 2-M | 59 | 59 | 29-A - 25-K | 210 | 210 |
| 3-A + 3-B | 66 | 66 | 38 | 67 | 67 |
| 4-B | 89 | 89 | 52-A - 52-C | 215 | 215 |
| 6-A | 109 | 109 | 54 | 218 | 218 |
| 7-A | 165 | 165 | 60 | 191 | 191 |
| 8-A + 8-B | 127 | 127 | 61 | 191 | 192 |
| 10-A + 10-B | 163 | 163 | | | |
| 13 | 226 | 226 | | | |
| 14-A - 14-C | 120 | 120 | | | |
| 15 | 181 | -- | | | |
| 17 + 18-A | 177 | 177 | | | |
| 18-B | 178 | 178 | | | |
| 21-A | 88 | 89 | | | |
| 21-B | 163 | 163 | | | |

DEFENDANT'S DOCUMENTARY EVIDENCE

| Exhibit | Offered | Admitted |
|---|---|---|
| 15 - 17 | 236 | 236 |
| 19 | 236 | 236 |
| 22 - 24 | 236 | 236 |

THE COURT:  All right.  I'm not going to stop you.

We also had a concern about Diane Crittendon, the first juror on the list.

MR. WARE:  Your Honor, I don't mean to interrupt the Court, but before we go any further, we would, for the record, object to the government going into those matters on opening statement.

THE COURT:  Thank you.  Overruled.

On the question of Ms. Crittendon, she has some health problems, and I think we're going to need to discuss those with her before we bring the entire jury down, so I would like to retrieve her.

Any objection?  Hearing none, Jim, bring Ms. Crittendon down.  Escort her over here so that we can have it somewhat private.  It's a bit of a private matter for her.

(Ms. Crittendon enters courtroom.)

THE COURT:  Ms. Crittendon, could you step over here?  This has to be on the record, but concerning the private nature of your situation, I would like to keep it as private as possible.

MS. CRITTENDON:  Okay.

THE COURT:  Counsel, if you'll step up here, as well.

(The following discussion occurred at the bench:)

THE COURT:  Ms. Crittendon, could you -- I already

know your situation fairly well, but could you, in whatever detail you feel like you can give it, could you discuss that so that all of us can hear it?

MS. CRITTENDON:  Okay.  Well, to be as brief as possible, two years ago I had a cancer that presents itself in pregnancy, and I was treated with chemotherapy.  And my blood has been tested since then, and recently I tested at a level that the cancer is present again, and I could either be pregnant or I could have the same cancer again.  So on Thursday I go to the doctor to determine if it's a viable pregnancy or if it's that potentially cancerous growth.  So --

THE COURT:  Okay.  And so you'll have a sonogram; is that right --

MS. CRITTENDON:  Right.

THE COURT:  -- on Thursday, and that will help determine which it is?

MS. CRITTENDON:  Right.

THE COURT:  And what to be done about it?

MS. CRITTENDON:  Right.  And if it is the type growth again, then she'll remove it immediately, and then I'll be monitored from that point.

THE COURT:  Okay.  You have been chosen to serve on this jury, as you're aware, and it's an important task.  So I have to balance the fact that after everything was said and done you were one of the persons chosen to be on the jury, for

good reason, against the question of your own health and safety and your own ability to concentrate and follow the evidence.  Can you help me out on that?  Will you -- considering the fact that you have been chosen for a very important duty, weighed against your own concerns about your own health and all that, can you help me on that about whether you think that you would be able to serve and whether you're willing to serve on this jury?

MS. CRITTENDON:  I think my state of mind right now precludes me from being able to concentrate fully on this.  As you can imagine, I don't know if I'm pregnant or if I have cancer right now.  I don't know.

THE COURT:  I understand.

Do any of you have any questions?

MR. ROPER:  No.

MR. KEARNEY:  No.

THE COURT:  If you wouldn't mind just stepping over to the jury box and have a seat, and let us discuss this.

MS. CRITTENDON:  Okay.

THE COURT:  Thank you.

(Ms. Crittendon left bench conference.)

MR. KEARNEY:  Take her out of the courtroom.

THE COURT:  Jim, would you escort Ms. Crittendon back to the jury room?

(Ms. Crittendon left courtroom.)

(The following discussion occurred at the bench:)

THE COURT:  Let me say my comment first.  This is pretty bad and I think anybody would have difficulty, and we do have four alternates duly chosen.

MR. KEARNEY:  Let me ask a question.  The Court had some information before we talked to her.  Is it that if she's pregnant it's not the cancer?  Because the --

THE COURT:  You now know everything I know.

MR. KEARNEY:  Is whatever the blood count was elevated in pregnancy and also with the cancer so she doesn't know which one it is, or is it she could be pregnant and have the cancer?

THE COURT:  My understanding it's either/or not --

MR. KEARNEY:  It's either/or?

THE COURT:  And she won't know till Thursday, and she has to have a procedure on Thursday at 1:00 to -- I think it's a sonogram, and I think if they decide that it's cancer, they'll remove it and monitor.  If it's a pregnancy, of course, the pregnancy, I think, will remain, and she'll try to carry the child.

MS. RAPER:  I don't know anything further than that.

THE COURT:  That's my understanding, and that's mostly based on what she just now told me.  I learned more from her just then than what I had been told prior to that time.

MS. RAPER:  In our prior discussions that I had with her over the phone, she indicated that she was in a high-risk pregnancy and didn't mention the cancer, but she wasn't -- she wasn't trying to give me as many details, obviously, as she did.

THE COURT:  So you understand that not only could it be cancer, but if it's a pregnancy, it's still a high-risk pregnancy?

MS. RAPER:  That's what I understood over the phone with her earlier.

THE COURT:  Do you want more detail on that?  Do you want to bring her back and inquire on that?

MR. KEARNEY:  I think we probably should, Judge.  We like this juror, obviously, and we don't want to lose her unless we have to, and that's a real concern for us.  And because of the nature of this type of case, I think we ought to at least get as much as we can on it.

THE COURT:  Let me tell you what, I'm not saying I'm not going to do that, but I want to think out loud with you a bit.  Just visiting with her, her face, she did not have good color.  She was --

MR. ROPER:  She was tearing up.

THE COURT:  She was tearing up, upset as she talked about it, and I'm very concerned about her personal health, not only her ability to listen and comprehend, but -- and to

pay attention, but also her own personal health.  And I'm a little reluctant to call her back and go into it again given what I saw.

MR. ROPER:  The sonogram is -- we would have to break court Thursday morning.

THE COURT:  And if --

MR. ROPER:  I know it takes awhile, because my wife has had three of them.  It takes awhile.  I've been through them.

THE COURT:  And if it turns out to be cancerous, she's going to be in recovery and I would think emotionally unable to concentrate.  I can't imagine someone could come right back and focus on something like this.

MR. ROPER:  I could see it being a -- obviously you can't think of anything worse than having cancer, but if she -- she would be -- I think she would be unable to concentrate through the -- what would be two of the most important days of our case when we put on the -- some of the testifying codefendants and the defendant's confession, so, I mean, I can see how it could prejudice our case.

THE COURT:  I'm going to excuse her.  I just can't see doing that to her.  We have four alternates, and so we will move the first alternate to her chair on the seating chart and proceed with the trial.

MR. KEARNEY:  We object.

THE COURT:  I understand.  Overruled.

And the first alternate is whom?

MS. RAPER:  Marsha Graves.

THE COURT:  Marsha Graves will be juror number one.

MR. KEARNEY:  Judge, different issue.  I'm a little concerned that the jurors in the far right-hand side of the jury box could be able to see his shackles, and that's what I'm a little concerned about.

THE COURT:  Well, we want him on the end of the table for that reason.  Can you bring him around?

(Off-the-record discussion.)

(End of bench conference.)

(Ms. Crittendon entered the courtroom.)

THE COURT:  Ms. Crittendon, thank you very much.  We're going to let you go.  You have our best wishes.

MS. CRITTENDON:  Thank you.  I appreciate that.

(Ms. Crittendon left the courtroom.)

THE COURT:  On your opening statements, the original scheduling order granted 30 minutes.  You're certainly not required to take the entire 30 minutes, I hope you don't, but that's what I gave you, so that's what you'll have.

(Jury seated at 9:10 a.m.)

THE COURT:  To make sure that we have the right jurors in the jury box, I'll call out the names again, and each juror should say "here" as his or her name is called.