# EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA     .   Criminal No.
                             .   4:94-121-Y
  vs.                        .
                             .   Fort Worth, Texas
ORLANDO CORDIA HALL          .   October 5, 1995
                             .   8:45 a.m.
. . . . . . . . . . . . . . . . .

VOLUME 4
TRANSCRIPT OF TRIAL
(Individual Voir Dire Examinations)
BEFORE THE HONORABLE TERRY R. MEANS,
UNITED STATES DISTRICT JUDGE

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 16 1996
NANCY DOHERTY, CLERK
BY _____, Deputy

APPEARANCES:

For the Government:          Mr. Richard Roper,
                             Mr. Paul Macaluso,
                             Ms. Delonia Watson and
                             Mr. Christopher Curtis
                             Assistant United States Attorneys
                             1700 Burnett Plaza
                             801 Cherry Street
                             Fort Worth, Texas   76102
                             (817) 334-3291

For the Defendant:           Mr. Michael Logan Ware
                             Attorney at Law
                             Law Offices of Michael Logan Ware
                             The Bryce Building
                             909 Throckmorton St
                             Fort Worth, Texas   76102
                             (817) 338-4100

                             Mr. Jeff Kearney
                             Attorney at Law
                             Jeff Kearney & Associates
                             Sundance Square
                             120 W. Third Street, Suite 300
                             Fort Worth, Texas   76102
                             (817) 336-5600

ORIGINAL

U.S. District Court

Official Court Reporter:        Deborah M. Roberts, CSR
                                523 United States Courthouse
                                501 West 10th Street
                                Fort Worth, Texas  76102-3637
                                (817) 239-2037


Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.

INDEX

| Venire Persons: | Voir Dire Examination by: | | |
| --- | --- | --- | --- |
| | The Court | The Government | The Defense |
| Patricial Gillies | 22 | -- | -- |
| Paula Larkin | 28 | 34 | 46 |
| Jean Venturea Ebrahimi | 52 | 59 | 70 |
| Barbel Beheler | 73 | -- | -- |
| Jon Kent Dickerson | 102 | 108 | 121 |
| Natalie Harris | 135 | 148 | 155 |
| Rosana Bridgewater | 163 | -- | -- |
| Linda Faye Palmer | 169 | 172 | 182 |
| | 189 | -- | -- |

U.S. District Court

consider it. And you know it's easy to sit up here abstractly when you're thinking about this, oh, yes, I could follow the law or no, I couldn't follow the law. It's easy to kind of say that here.

A. Uh-huh.

Q. But if you're sitting over in the jury and you're facing it, my question is this: Could you under the proper circumstances, facts and circumstances, actually sign your name to a verdict form that would result in the death of a defendant?

A. Yes. If it had all the facts and everything presented before me, yeah, if that's what it is.

Q. And let me ask you this, and I kind of forgot to ask you about this earlier, but if there is a referendum on the death penalty now, would you vote for or against the death penalty, if you had that choice?

THE COURT: What he means by that is say we had a vote countrywide and everybody could go vote on the question, not here in the jury room or in the courtroom, but countrywide, if you could vote on that.

MS. EBRAHIMI: I would vote for the death penalty for certain cases, yeah.

BY MR. ROPER:

Q. I want to ask you, you went over the -- a mitigating factor and, you know, we have the aggravating factors and the

I did believe her and I didn't strike her.  And I may be wrong about that, and I'm sure in about a year or so we'll be finding out.

MR. KEARNEY:  I hope not, Judge.

THE COURT:  Well, I'm not sure we'll be finding out. That assumes a guilty verdict.

Okay.  Let me ask you something.  My cold is getting worse and I don't feel very good.  If it gets any worse overnight, I don't know if I can be here.  How do y'all feel about taking tomorrow off?

MR. KEARNEY:  That's fine.

THE COURT:  Can we live with that?

MR. MACALUSO:  Amen.

MR. KEARNEY:  I could live with it.

THE COURT:  If y'all think we are going to be so far off base we need to come in, I can probably do it.

MR. ROPER:  I think we're moving faster today.

THE COURT:  In that regard let me say this:  I'm going to be a little more stringent even than I'm being now. If y'all are asking questions that clearly are the same ones I've just asked -- well, let me put it this way.  I'm going to give you ten minutes, and if during those ten minutes you're asking questions that have not been asked, I'll let you go on. I'll give you ten minutes to ask the same questions again, at least give you that, but if during that ten minutes you use it

to ask the same questions, that's all you're going to get. And if you're asking new questions and getting into new territory, I'll be liberal about that, then you can go on and have your full 15 or 20.

MR. ROPER:  Let me -- and I understand your concern with that.  And I've tried to go about it a different way to impress upon them the law, but this is such -- I mean, when we were asking those last questions, it's such a burden on these jurors.  This is a screwy process about considering the aggravating factors and it's such a new deal, and Mr. Kearney is very artful in his questioning.  I feel like it's necessary to talk to them about some of this --

THE COURT:  Well, Mr. Kearney largely has been turning up new ground in his questions and so --

MR. KEARNEY:  I've been doing what?

THE COURT:  Turning up new ground in your questions. Very little of his has been repetitious, most of yours is, and I just think -- I think some of them are feeling a little bit talked down to by having -- I go over it over there, I go over it again here, and you go over it again.  I mean, hell, yeah, you've told me three times, two times already, and I've seen that on their faces.  So hasn't Cheryl.

So I'm just saying I've gone over it pretty thoroughly, and I think you should hit new ground, and if there's something where there was an uncertainty in their answer where